UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PHILIPS DOMESTIC APPLIANCES AND PERSONAL CARE COMPANY, a division of Philips Electronics North America Corporation | Civil Action No. 07 CV 11290 (WHP) |
|  | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES; JURY TRIAL DEMAND** |
| Plaintiff, |  |
| v. |  |
| BRAUN GMBH and THE PROCTER & GAMBLE COMPANY |  |
| Defendants. |  |

Plaintiff Philips Domestic Appliances and Personal Care Company, a division of Philips Electronics North America Corporation ("Philips"), by its undersigned counsel, Sullivan & Cromwell LLP, for its Complaint against Braun GmbH ("Braun") and The Procter & Gamble Company ("P&G"; collectively "Defendants"), alleges on knowledge as to itself and upon information and belief as to all other matters as follows:

## INTRODUCTION

1.    Braun has been losing market share in the United States electric shaver business to Norelco — the brand owned by Philips — for years.  From 2004 to the second quarter of 2007, Braun's share of the electric shaver business dropped more than 15%.  To reverse this trend, Braun and its new owner, P&G, needed to significantly refresh the Braun shaver line.  But, because Defendants lacked any true new invention to offer consumers, Braun and P&G began to pretend that they did.  On May 15, 2007, Braun and P&G announced that, in September 2007, Braun would be bringing "electric shaving into the 21st

Century with the introduction of Pulsonic, which incorporates innovative sonic technology." (Exh. A.)

2.    In September, Braun carried through on its May 15 announcement with its launch of the Pulsonic to U.S. consumers. True to the pretense of a new innovation, Defendants claimed the introduction of the new top-of-the-line Pulsonic was nothing short of "a revolution in shaving technology." Revolution, however, comes at a price. As its new flagship product, Braun sells the Pulsonic to consumers for more than $250, an amount at the very highest end of the range for electric shavers. For that price, consumers require a real reason for the purchase and Defendants offered just that: the high price was justified because, as Defendants' claim, the Pulsonic is a "technological breakthrough" (Exh. B), a product that "transforms the shaving experience" (id.), and a "world first from Braun." (Exh. C.) In the words of Defendants: "The Braun Pulsonic represents a new — and revolutionary — shaving system." (Exh. B.)

3.    What is this revolutionary new technology that has "transformed" the shaving experience? According to Defendants, the critical differentiating feature of this new product is its "Pulsonic technology." Powered by "innovative sonic technology" (or "unique sonic pulses"), the Pulsonic emits "over 10,000 micro-vibrations per minute through the shaver head to gently stimulate the skin, causing it to ripple, which helps expose and shave more hairs with every stroke." (Exh. A.)

4.    According to Defendants, the real world results of this new scientific invention are just as impressive as the device itself. Because, as Defendants claim, this new "sonic" technology is so revolutionary and the benefits so palpable, "9 out of 10" men voted Pulsonic the "best electric shaver they have ever tried." (Exh. B.) This assertion is publicized in the television commercial promoting the Pulsonic, the print advertisements

appearing in men's interest magazines and Oprah Magazine, and highlighted on
www.braun.com.

5.     For the Pulsonic's product launch, Defendants have commenced an
extraordinarily aggressive advertising campaign, at a cost of tens of millions of dollars,
running the gamut from traditional television commercials touting this innovative "World
first," to print advertising to internet advertising (including a "Braun blog") and even going
so far as to post explanatory videos highlighting the science underlying the "Pulsonic
technology" on YouTube.com ("YouTube").

6.     Through this deluge of claims, all glorified by references to "sonic"
technology, Defendants are deceiving consumers. Under any legitimate *scientific* scrutiny,
Defendants' claim of a "revolution" in shaving technology with "unique sonic pulsations"
fails. The Pulsonic is no different acoustically (*i.e.*, in its "sonic waves") in any material
respect from Braun's last top-of-the-line shaver, the 360° Complete (which was never
asserted to be a revolutionary "sonic" device), and not different in any material respect from
earlier Braun shavers, making the claim of a "unique" and "sonic" "revolution" in shaving
false on its face.

7.     Defendants' advertisements are fraught with false assertions and
deceptive images used to promote this new "sonic" technology. Defendants thus credit the
Pulsonic's "innovative sonic technology" with the ability to ripple the skin, which in turn
helps shaving by "raising" and "exposing" more hair. As one print ad boasts, "[i]ts powerful
'Pulsonic Technology' sends more than 10,000 sonic micro-vibrations per minute through the
oscillating shaver head to help expose and shave more hair with every stroke." Similarly, the
television commercial for the Pulsonic (Exh. D) includes an animation, first showing skin

rippling, and then showing how the ripples cause the hair to elongate in front of the foil, showing, supposedly, how the Pulsonic makes the shave extra-close.

8.    To emphasize further the point that only Defendants offer the "unique" "Pulsonic Technology," Braun posts a comparison video, purporting to prove that the Norelco SmartTouch shaver cannot compete with the new sonic pulsations of the Pulsonic. Each of Defendants' advertisements contains a reference to the www.braun.com website to ensure that those wishing further information are sent to a site claiming that the "Pulsonic Technology" is different than that of the Norelco SmartTouch shaver.

9.    Defendants' visual and written claims are completely false, false by implication and misleading and are made solely to entice consumers to purchase the "technologically advanced" (and high-priced) Pulsonic (and, thus, not a Norelco).  Acoustical analysis of both the 360° Complete and the Pulsonic reveal little difference in acoustical output.  The "ripples" to the skin — a much touted impact of the Pulsonic "sonic waves" — also exist with respect to the 360° Complete, not owing to any "sonic waves" but only because the Pulsonic vibrates, and the mechanical — not acoustic — vibration causes the skin to "ripple."

10.    Worse still, Braun is a recidivist false advertiser, on this very score.  In 2005, Braun's parent, The Gillette Company, advertised the magic of sonic waves for the Gillette "M3 Power," a claim so bereft of support it was preliminarily enjoined by the United States District Court for the District of Connecticut.  In that prior litigation, *Schick Mfg., Inc. v. Gillette Co.*, 372 F. Supp. 2d 273, 277 (D. Conn. 2005), Gillette used nearly identical scientific claims to suggest that its product, the "M3 Power" used "micropulses" to "raise hair up and away from the skin."

-4-

11.    Finally, Defendants' sonic campaign of deceit is set to influence the most important selling season for electric shavers: the holiday buying season. For Philips, approximately half of the purchases of its shavers are made by consumers in the final three months of the year. Accordingly, marketing during this season is crucial and make-or-break for any manufacturer of electric shavers. Braun and P&G are attempting to prey on consumers during the Christmas shopping season, a point underscored in the final statement in its television commercial, which refers to the Pulsonic as "the perfect gift."

12.    Because these claims are false and misleading, Philips challenges Defendants' advertising campaign and seeks preliminary and permanent injunctions preventing Braun from further misleading and deceiving consumers. This action is therefore brought under the Lanham Act, 15 U.S.C. § 1125, *et. seq.*, and the New York Consumer Protection Act, N.Y. Gen. Bus. L. § 349, *et. seq.*

13.    Absent immediate injunctive relief, Philips will be further irreparably harmed as consumers will likely fall victim to Defendants' deceptive advertising. Because none of Braun's claims regarding the new sonic technology is true, and because damages may be difficult to establish, Philips is irreparably harmed.

## THE PARTIES

14.    Plaintiff Philips is a division of Philips Electronics North America Corporation ("PENAC"), a corporation organized under the laws of the State of Delaware. PENAC is headquartered in New York, New York. Philips manufactures and distributes the Norelco line of electric shavers. Norelco shavers are the leading brand of shavers in the United States today.

15.    Defendant Braun is a corporation organized under the laws of Germany with its principal offices located in Germany.  Braun manufacturers and advertises its Braun shavers.

16.    P&G is an Ohio corporation with its principal place of business at 1 Procter & Gamble Plaza, Cincinnati, Ohio.  P&G distributes and markets Braun products in the United States and elsewhere.

## JURISDICTION AND VENUE

17.    This Court has federal jurisdiction of the Lanham Act claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants conduct business in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District.  Braun and P&G are advertising their product in this District through print, television, and internet advertisements and are making sales to consumers in this District.

19.    This Court has personal jurisdiction over Defendants.

## FACTS

**A.    The Braun Pulsonic**

20.    The Pulsonic is an electric shaver, with an extremely thin piece of material (the "foil") that separates the user's face from the "cutters," which move back and forth and actually perform the cutting of the beard hairs.  When shaving, a man presses the foil against the face, which, as the foil travels across the face, permits the foil to lift the hairs in preparation for the cutters.  With the cutters close to the foils, the cutters linear motion cuts the hair.  The motion of the Braun Pulsonic (and others in the Braun line) is different than the

rotary motion of the blades on a Norelco shaver, but the Norelco shaver, like the Braun, uses a foil to lift hairs to prepare them for cutting.

        21.    The Pulsonic's cutter motion is identical to that of the Braun 360° Complete and the shavers preceding the 360° Complete. While the Pulsonic's cutters move back and forth at a rate of approximately 172 cycles per second compared to the 360° Complete's rate of approximately 143 cycles per second, there is no difference in the "sonic" output of these two shavers. In fact, both of these shavers produce approximately the same acoustical (*i.e.*, "sonic") pressure — a function of amplitude displacement (motion) and frequency that is measured in Pascals. Both the Pulsonic and the 360° Complete produce approximately 6 Pascals of acoustical pressure, which translate into less than 1.4/1000 pounds per square inch of pressure, an amount that pales in comparison to the amount of vibratory pressure produced by the simple vibration of the Pulsonic. Tellingly, Braun and P&G never ascribed any "sonic" effect in its advertising of the Braun 360° Complete, precisely because there is none, just as there is none with respect to the Pulsonic.

**B.**    **The Pulsonic's Supposed Use of "Sonic" Technology**

        22.    Braun's claims regarding the Pulsonic's "innovative" new sonic technology misrepresent the actual performance of the Pulsonic. The Pulsonic's "sonic" properties are nothing but a gimmick that provides no benefit to the consumer from the "sonic micro-vibrations."

        **(1)**    **"Sonic" Technology Causes Skin "Rippling" to Shave Closer**

        23.    Defendants' advertising boasting unique "rippling" of the skin resulting from the Pulsonic's "sonic" technology is false. Research video taken of the Pulsonic comparing it against the 360° Complete reveal no differences in the ripples of the skin. (*Compare* Exh. E (Pulsonic) with Exh. F (360° Complete).) Any ripples are the result

of the momentum of the cutters' back-and forth-movement under the foil being translated into skin motion through the momentum generated by vibration to the skin, not by acoustical pressures.

24.    To bolster its false claims regarding the "rippling" effects of "sonic" technology, Braun singles out the Norelco SmartTouch electric shaver in its deceptive advertising. In a video posted on its website and on YouTube, Defendants show a video of both electric shavers submerged in a liquid with the Pulsonic rippling the liquid considerably while the SmartTouch does not produce comparable rippling. Because the SmartTouch is smoother to hold (less vibration owing to the rotary blades and the absence of the linear cutter motion of the Braun Pulsonic), Defendants' video clip deceives consumers into believing that there is some correlation between liquid rippling and skin rippling, which translates into hair lengthening. Simply put, Braun's "comparative" video deceives consumers by implying that the "sonic" technology of the Pulsonic provides shaving benefits that the SmartTouch lacks.

### (2)    The Pulsonic's Claimed Ability to Use "Sonic" Technology to "Raise" and "Expose" Beard Hairs

25.    In addition, the entire notion that "ripples" in the skin lead to a lengthening of the hair is refuted by simple anatomy and physics (and a review of Philips' research videos, showing no hair lengthening despite the presence of the "sonic powered" Pulsonic). Beard hair grows out of hair follicles in the skin. The hair is *attached* to the hair follicle; hairs grow from the base of the follicle. Yet, according to Defendants' commercials, the presence of the "ripple" in the skin, as it passes by the hair, depresses the skin, thus "exposing" more hair. The problem is that the pores of the skin are not open in the way that Braun posits — to the contrary, the pores closely hug the hair within the follicle and do not allow for the "hair extension."

26.    Braun is certainly well aware that its "hair extension" theory is without

merit. In *Schick Mfg., Inc.* v. *Gillette Co.*, 372 F. Supp. 2d 273 (D. Conn. 2005), Schick

challenged the advertisements of Braun's parent company, The Gillette Company

("Gillette"), for the "M3 Power" razor, which oscillated at 143 Hertz (cycles per second).  In

advertisements, Gillette had claimed that M3 Power "micro-pulses raise hair up and away

from the skin", which allowed a closer shave.  Gillette, however, based its hair extension

theory on a number of unproven theories, hypothesizing that a

> "facial hair becomes 'bound' with the follicle due to an accumulation
> of sebum and corneocytes (dead skin cells).  Gillette contends that the
> oscillations could free such a 'bound' hair.  Second, Gillette
> hypothesizes that hairs may deviate from their normal paths in the
> follicle and become 'trapped' outside the path until vibrations from the
> M3 Power restore them to their proper path."

*Schick*, 372 F. Supp. 2d at 279.  But the problem for Gillette was that neither the expert

dermatologist for Schick, *nor the expert dermatologist retained by Gillette*, had ever seen any

evidence of any such "hair exposure" or "hair extension" theory.  According to the Court,

> "Gillette's expert hair biologist, Dr. Michael Philpott, has studied hair
> biology for almost 20 years.  He testified that, prior to his retention as
> an expert by Gillette, he had never seen a hair trapped in the manner
> posited by Gillette. . . . Dr. Philpott acknowledge that neither of
> Gillette's two hypothesis of hair extension have any support in medical
> or scientific literature.  With regard to Gillette's theory that hair could
> become bound in the follicle by sebum and corneocytes, Dr. Philpott
> admitted that no evidence supports that theory."

*Schick*, 372 F. Supp. 2d at 279.   The District of Connecticut enjoined Gillette, Braun's parent

company, from making claims that the M3 Power's "micro-pulses raise hair up."  The Court

found that such claims were unsupportable scientifically, and the Court specifically refused to

credit Gillette's claim that "oscillations cause hair lengthening."

27.    Similarly, there is no evidence that "ripples" caused by the Pulsonic (as

opposed to the M3 Power) lead to the hairs being further extended.   Simply put, the "sonic"

properties of the Pulsonic do not improve the shave in any way. The putative sonic power of the Pulsonic does not raise facial hair, expose more hair or enable more hair to be shaved or captured in every stroke.

### (3)     Braun's Survey Results Allegedly Underscore Its Scientific "Breakthrough"

28.     To help establish some benefit from its "revolutionary" new shaver, Defendants needed to demonstrate some impact of this "sonic" feature, deciding that they would put together a biased survey to arrive at a result. To do this, Braun turned to the *Men's Health* magazine and its "users' panel."

29.     The survey that purportedly supports the "9 out of 10 -- Voted Best Electric Shave Ever" appears to be nothing short of a sweepstakes promotion, not a scientifically valid survey. Braun gave free Pulsonic razors to the members of the *Men's Health* panel, requiring members to respond to a survey after a few weeks of use. Further, the release signed by the Panel participants made clear that there were few controls in how many different times a "participant" could enter the sweepstakes. The safeguards against bias were minimal: (i) only "(1) entry per person per e-mail address" (meaning that multiple entries by one person were possible), (ii) the survey form was combined with the sweepstake's entry form, ensuring that one might only complete the survey to gain the "Sweepstakes" prize, (iii) and no effort was apparently made to randomize the survey to make sure that the results were scientifically valid.

30.     Worse still, the "sweepstakes" survey was not blinded — the *Men's Health* user panelists knew that they were performing a survey for Braun, and were incentivized by Braun by a potential to win $500.

-10-

31.    Defendants did all it could do to bias the survey and make its results as favorable to the Braun Pulsonic as possible, which are reflected in the "9 out of 10" "best" shave "results."

**C.    Defendants' False and Misleading Pulsonic Advertisements**

32.    Despite these facts, Defendants launched an array of different, overlapping, and fact-intensive advertising claims in print and on television, the internet, and its packaging.

33.    Defendants make five types of actionable claims:  (i) claims, by words and images, that the Pulsonic operates by using "sonic" powers, (ii) claims, by words and images, that the "sonic" elements of the Pulsonic are unique or "revolutionary",  (iii) claims, by words and by images, that the "sonic" waves emitted by the Pulsonic can cause hair to extend or to be exposed, (iv) claims, by words and by images, that other razers, including those of Philips, fail to possess these sonic powers that make those other shavers less desirable, and (v) claims that the result of using a "sonic" shaver is that "9 out of 10" men find this to be the "best shave" or "best shave ever."

**(1)    Defendants' "Sonic" Properties Claims**

34.    Notwithstanding that the Pulsonic has no acoustical or sonic powers that assist in shaving, Defendants make the following claims in a number of different advertisements, including that:

(a)    the Braun Pulsonic is "powered by unique sonic pulses";

(b)    the "heart of the Pulsonic Shaver is an innovative sonic motor that powers a high frequency dynamic shaver head"; and

(c)    the Braun Pulsonic "incorporates innovative sonic technology";

(d)    "Pulsonic Technology" is the result of scientific research;

(e)    the Pulsonic "incorporates innovative sonic technology"; and

(f)    the Pulsonic has "sonic pulsing action."

**(2)    Defendants' Unique "Sonic" Claims**

35.    Notwithstanding that the Pulsonic is not acoustically different from recent Braun shavers, Defendants make the following claims in a number of different advertisements, including that:

(a)    the Pulsonic is "a world first" and is "powered by unique sonic pulses";

(b)    the Pulsonic is "the first of a new kind", a "new shaving system" and a "revolution in shaving technology"; and

(c)    the Pulsonic is "the world's first shaver powered by an innovative sonic technology."

**(3)    Defendants' Sonic Powers "Expose" and "Shave More Hair"**

36.    Notwithstanding that any ripples on the face are caused by mechanical (and not "sonic") vibrations, Defendants make the following claims in a number of different advertisements, including that:

(a)    the Pulsonic uses "over 10,000 micro-vibrations per minute [to] help expose and shave more hair with every stroke for Braun's most thorough shave ever";

(b)    the Pulsonic is shown, in animation, to cause the skin to ripple and facial hairs to rise as the Pulsonic's foil approaches;

(c)    the Pulsonic uses "innovative sonic technology to help reduce friction while shaving, maximize skin comfort and help capture more hairs in fewer strokes";

(d)    the Pulsonic's sonic power "stimulates thousands of tiny

vibrations on the skin to loosen and raise problem hairs so more

hair can be captured in every stroke";

(e)    "Sonic pulsations sent to the shaver head stimulates

micro-vibrations on the skin helping to raise hairs";

(f)    the Pulsonic's operation show, in animations, facial hairs

rising as a result of the ripples of the skin;

(f)    the Pulsonic causes hair to rise, as seen in a Braun "research"

video, purportedly as a result of "Pulsonic Technology";  and

(g)    the Pulsonic causes facial hair to rise out of its follicle as a

direct result of the ripples in the skin, in advance of the foil, as

highlighted in a Braun explanatory video.

**(4)    Other Shavers Supposedly Lack this "Revolutionary" Technology**

37.    Notwithstanding that the "sonic" powers of the Pulsonic have no real

world impact, Defendants claim that the Norelco SmartTouch lacks these powers, and that

the absence of these "sonic" powers is important in the purchase of an electric shaver.

Defendants thus advertise in a video a side-by-side comparison, showing the Pulsonic and

Norelco's SmartTouch electric shaver submerged in liquid with the Pulsonic rippling the

liquid while the SmartTouch does not to the same degree, falsely implying that the Pulsonic

has shaving abilities that the SmartTouch does not.

**(5)    The Impact of "Sonic" Powers --- the "9 out of 10" Claim**

38.    To show, nevertheless, that the "sonic" powers have a clear effect,

Defendants further claim that the Pulsonic has been chosen over competing brands in a

survey, including claims that:

-13-

(a)    "9 out of 10" and "Voted Pulsonic As The Best Electric Shaver"; and

(b)    "9 out of 10 Voted Pulsonic Best Electric Shave Ever", identifying the source as "Men's Health Reader Panel Survey, July 2007."

**D.    Defendants' Dissemination of These Claims**

39.    Defendants are disseminating these advertising claims extraordinarily broadly.  Some or all of these claims appear in a (i) television commercial, (ii) the Braun website located at www.braun.com, (iii) on videos posted by Braun on the YouTube site (and identifiable by the search terms "Braun," "Pulsonic," "sonic shave," "shaving revolution," among others), (iv) on a "blog" devoted to publicizing the Braun Pulsonic, hosted by Braun, (v) in print media, (vi) in internet "banner" and "pop-up" advertisements, undoubtedly in response to the use of "key" terms or placed in particularly opportune web-pages, depending on the content and (vii) on the Pulsonic's packaging and point of purchase displays.

**E.    Defendants' Deceptive Advertising Causes Philips Irreparable Injury**

40.    Defendants knowingly and intentionally misrepresent the impact of the Pulsonic's "sonic" power in an effort to convince consumers that its "sonic micro-vibrations" are a revolutionary breakthrough in electric shaver technology that made the Pulsonic more technologically advanced than the Norelco SmartTouch and other Philips electric shavers lacking this "feature."  Defendants did so to convince consumers to buy the Pulsonic instead of the Norelco SmartTouch and other competing electric shavers.

41.    Defendants' advertising directly targets the Norelco SmartTouch shaver in its Comparison Video, available on the Pulsonic website, the blog and on www.youtube.com.  Further, Defendants' print and television advertising directs potential

consumers to the Pulsonic website, where consumers can view the "comparison" with the SmartTouch. The SmartTouch is the only electric shaver targeted by Defendants in their Pulsonic advertising.

42.    Many consumers desire the most technologically advanced electric shaver. Since Braun is deceiving consumers, causing them to believe that the Pulsonic is more technologically advanced than the SmartTouch when it is not, Braun is irreparably harming Philips.

43.    Even aside from the direct attacks on the Norelco line, Defendants' deceptive advertising deprives Philips of the ability to compete on a fair level with the Pulsonic.

44.    Philips has been irreparably harmed by Defendants' advertisements.

45.    Each and every one of the advertising claims being made by Defendants are intended to and will further irreparably and unfairly harm Philips, including the reputation and good will of its Norelco line of products. Consequently, Defendants' materially false and misleading claims are likely to mislead consumers into purchasing Braun products instead of Philips products.

**F.    Defendants' Deceptive Advertising Harms Consumers**

46.    Defendants' false advertising harms consumers by causing them to investigate and possibly buy a device, the Pulsonic, which does not do what Defendants claims it does.

### FIRST COUNT
**(Section 43(a) of the Lanham Act – False Advertising)**

47.    Norelco incorporates by reference the allegations set forth in paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48.    Defendants' false and misleading descriptions of fact or representations of fact which misrepresent the nature, characteristics or qualities of the Pulsonic violate section 43(a) of the Lanham Act because they are literally false, implicitly false, necessarily false and misleading.

49.    Defendants' false and misleading statements have deceived or have the capacity to deceive a substantial segment of consumers.

50.    Defendants' false and misleading claims are material in that they are intended to, and are likely to, mislead and deceive consumers into purchasing the Pulsonic shaver instead of other electric shavers, including those offered by Philips.

51.    Defendants' conduct is willful, deliberate, and in bad faith.  Not only has a federal court barred Braun's parent company from making some of the very claims that Braun is making with regard to the Pulsonic, but Philips explicitly warned Defendants that their advertisements are false and misleading and that Philips would pursue this suit if Braun continued to use any of the above-mentioned advertisements.  Defendants have chosen to ignore that warning and continue with its deceptive advertisements.

52.    Both Braun and Philips electric shavers are sold in interstate commerce, in competition with each other.

53.    Philips has been and is likely to continue being damaged by Defendants' false and misleading representations concerning the Pulsonic shaver, entitling it to recover damages and Defendants' profits from their false and misleading representations, in an amount to be determined by a jury at trial.

54.    Philips has suffered, and, unless Defendants are restrained and enjoined, will continue to suffer irreparable injury by reason of the false and misleading claims made by Defendants about the Pulsonic shavers.

**SECOND COUNT**
**(New York General Business Law Sections 349 and 350 – Deceptive Acts and Practices, False Advertising)**

55.     Philips incorporates by reference the allegations set forth in paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56.     Defendants' false and misleading descriptions of fact or representations of fact which misrepresent the nature, characteristics or qualities of the Pulsonic are literally false, implicitly false, necessarily false and misleading and violate section 349 of the New York State's General Business Law.

57.     Defendants' false and misleading statements have deceived or have the capacity to deceive a substantial segment of consumers.

58.     Defendants' false and misleading claims are material in that they are intended to, and are likely to, mislead and deceive consumers into purchasing the Pulsonic shaver instead of other electric shavers, including those offered by Philips.

59.     Defendants' conduct is willful, deliberate and in bad faith.

60.     Defendants' false advertising campaign has harmed consumers.

61.     Philips has been and is likely to continue being damaged by Defendants' false and misleading representations concerning the Pulsonic shaver, entitling it to recover damages and Braun's profits from its false and misleading representations, in an amount to be determined by a jury at trial.

62.     Philips has suffered, and, unless Defendants are restrained and enjoined, will continue to suffer irreparable injury by reason of the false and misleading claims made by Defendants about the Pulsonic shavers.

**PRAYER FOR RELIEF**

WHEREFORE, Philips respectfully requests that this Court enter judgment:

1. Declaring that Defendants have violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and section 349 of New York State's General Business Laws;

2. Enjoining Defendants, and those acting in concert with them, preliminarily and permanently from employing advertising methods that confuse/mislead consumers as to the nature or abilities of the Pulsonic and from disseminating any advertisement containing any of the claims challenged in this Complaint;

3. Order Defendants to disseminate statements to consumers correcting the false claims challenged by this Complaint, in equal amounts to the amount spent advertising such false claims;

4. Awarding Philips damages for Defendants' unlawful conduct;

5. Awarding treble damages pursuant to 15 U.S.C. § 1117 for damages awarded under the Lanham Act;

6. Granting Philips its costs and disbursements in this action, including its reasonable attorneys' fees;

7. Ordering such other and further relief against Defendants as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Philips hereby demands trial by jury of any and all issues properly triable by jury in this action.

Dated: December 17, 2007

**SULLIVAN & CROMWELL LLP**

By: *Stephanie G. Wheeler*

Stephanie G. Wheeler (SW-7751)
Richard J.L. Lomuscio (RL-6994)
Matthew A. Schwartz (MS-8359)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Attorneys for Plaintiff*

*Of Counsel:*

Michael H. Steinberg
Jessica A. Rassler
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

Exhibit A

| | | |
|---|---|---|
| **Braun:** | Kelly Vanasse | 617-421-7466 |
| **Porter Novelli:** | Richard Small | 212-601-8187 |
| | Courtney Flanagan | 212-601-8282 |

## BRAUN REVOLUTIONIZES ELECTRIC SHAVING WITH THE INTRODUCTION OF BRAUN PULSONIC

### *The New Pulsonic Delivers The Closest, Most Comfortable Braun Shave Ever*

BOSTON, May 15, 2007 –Braun brings electric shaving into the 21st Century with the introduction of Pulsonic, which incorporates innovative sonic technology to help reduce friction while shaving, maximize skin comfort and help capture more hairs in fewer strokes.  The result: the closest, most comfortable Braun shave ever.

Braun Pulsonic's motor sends over 10,000 micro-vibrations per minute through the shaver head to gently stimulate the skin, causing it to ripple, which helps expose and shave more hairs with every stroke.  The hair is shaved with high-speed precision using leading edge Gillette Blade Technology. For added closeness and comfort, Braun Pulsonic incorporates a Sensitive Flexing Head, which follows the contours of a man's face with twice the pivoting angle of other Braun shavers, and shaves hard-to-reach areas using touch sensitive foils that respond to the slightest change in skin surface. Additionally, Braun Pulsonic is the world's first shaver brand with an ENERGY STAR-qualified battery charger, which recognizes the shaver's energy-efficient design and Braun's commitment to environmental sustainability.

"Braun Pulsonic is the culmination of many years of research and brings electric shaving to a new level in terms of closeness and comfort," said Bracken Darrell, Global President, Braun. "It is a stunning reflection of our dedication to engineering technologically advanced shavers that deliver what men have come to expect from Braun – an incredibly close and comfortable electric shave."

-more-

*Braun Revolutionizes Electric Shaving with the Introduction of Braun Pulsonic - page 2*

Braun Pulsonic features the world's most intelligent Clean&Renew™ system that automatically cleans, lubricates, dries and charges the shaver at the touch of a button. It features a new Fast Clean mode (available only in 9595 model) that cleans the shaver in just 25 seconds, which is ideal for men on the go.  For occasions when the Clean&Renew system is not available, the Pulsonic shaver can be washed under running water.  The shaver also incorporates a modern, ergonomic design that combines an elegant silver and chrome finish with sleek lines.

Braun Pulsonic is available in two models:
- **9595** – a silver and chrome model with LCD display screen and Braun's most advanced Clean&Renew system, which automatically cleans, lubricates, dries and charges the shaver at the touch of a button, along with a Fast Clean function
- **9585** – a silver and chrome model with 3 LED displays and a Clean&Renew system, without the Fast Clean feature

Braun Pulsonic will be available in department/specialty, mass merchandise, and club stores in September 2007.  Suggested retail prices will range from $239 to $269.

About Braun

Braun, a brand of The Procter & Gamble Company (NYSE: PG), manufactures a variety of high-quality, European-designed products that are sold worldwide, including electric shavers, oral care products, and household appliances. Please visit http://www.braun.com.

About P&G (NYSE: PG)

Three billion times a day, P&G brands touch the lives of people around the world. The company has one of the strongest portfolios of trusted, quality, leadership brands, including Pampers®, Tide®, Ariel®, Always®, Whisper®, Pantene®, Mach3®, Bounty®, Dawn®, Pringles®, Folgers®, Charmin®, Downy®, Lenor®, Iams®, Crest®, Oral-B®, Actonel®, Duracell®,

*Braun Revolutionizes Electric Shaving with the Introduction of Braun Pulsonic - page 3*

-more-

Olay®, Head & Shoulders®, Wella®, Gillette®, and Braun®.  The P&G community consists of over 135,000 employees working in over 80 countries worldwide. Please visit http://www.pg.com for the latest news and in-depth information about P&G and its brands.

# # #

# Exhibit B

ADVERTISEMENT

# TALK ABOUT A REVOLUTION...

The Braun Pulsonic transforms the shaving experience

Imagine a world where shaving is quick, your skin doesn't take a beating, and your entire face is baby-smooth when you're done (even in those hard-to-reach places). Oh yeah, and the shaver is self-cleaning and feels like new every time you use it. Think you're dreaming? Wake up. The future is here. And its name is the Braun Pulsonic. And oh, by the way, 9 out of 10 voted Pulsonic as the best electric shaver they have ever tried—source: Summer 2007 Men's Health Reader Panel Braun Shaving Survey.

**A TECHNOLOGICAL BREAKTHROUGH:** The Braun Pulsonic represents a new – and revolutionary – shaving system. Its powerful "Pulsonic Technology" sends more than 10,000 sonic micro-vibrations per minute through the oscillating shaver head to help expose and shave more hair with every stroke. The result? A smooth shave with less skin friction.

**PIVOT AND PRECISION:** The Pulsonic's shaver head has twice the pivoting angle of other Braun shavers, making it easier to reach those challenging facial areas, like under the nose and neck.

**FEELS LIKE NEW, EVERY TIME:** At the touch of a button, Braun's Clean & Renew System automatically cleans, lubricates, dries and charges the shaver – making you feel like you're using a new shaver every day.



# BRAUN'S FIVE STEPS FOR YOUR BEST SHAVE EVER

**1** Shave before showering: You'll get a closer, more comfortable shave if skin is free of moisture before you begin.

**2** Shave against the grain. Use light strokes and avoid going over the same shaving area repeatedly.

**3** Keep it clean. It's easy with Braun's Clean & Renew™ System.

**4** Replace your foil and blades every 18 months to optimize shaving performance.

**5** Moisturize after shaving to stay hydrated.

**VISIT BRAUN.COM/NA/PULSONIC**

AD CODE: BRAUPM-0139    SOURCE: Men's Health-NOV 1 07



# 9 OUT OF 10

## VOTED BEST ELECTRIC SHAVE EVER

—Men's Health Reader Panel Survey, July 2007



 A world first from Braun: The new Pulsonic shaver, powered by unique sonic pulses. Over 10,000 micro vibrations per minute help expose and shave more hair with every stroke. For Braun's closest, most comfortable shave ever. www.braun.com/na/pulsonic

**BRAUN**

©2007 P&G

**AD CODE: BRAUPM-0139    SOURCE: Men's Health-NOV 1 07**

Exhibit C



# 9 OUT OF 10

## VOTED BEST ELECTRIC SHAVE EVER

—Men's Health Reader Panel Survey, July 2007





A world first from Braun: The new Pulsonic shaver, powered by unique sonic pulses. Over 10,000 micro vibrations per minute help expose and shave more hair with every stroke. For Braun's closest, most comfortable shave ever. www.braun.com/na/pulsonic

**BRAUN**

©2007 P&G

**AD CODE: BRAUPM-0135     SOURCE: Golf Magazine-NOV 1 07**

Exhibit D

**PLEASE SEE CD-ROM INCLUDED AS
EXHIBIT D WITH
HARD COPY OF COMPLAINT**

Exhibit E

# PLEASE SEE CD-ROM INCLUDED AS
# EXHIBIT D WITH
# HARD COPY OF COMPLAINT

# Exhibit F

# PLEASE SEE CD-ROM INCLUDED AS EXHIBIT D WITH HARD COPY OF COMPLAINT